EMILY BABES, ADMINISTRATRIX
(ESTATE OF CHERYL BABES) *v.*
STEVEN BENNETT ET AL.
(SC 15887)

Callahan, C. J., and Borden, Berdon, Katz and Palmer, Js.

Argued September 24—officially released December 22, 1998

*Kathleen L. Nastri*, for the appellant (plaintiff).

*David A. Haught*, for the appellee (defendant state of Connecticut).

*Opinion*

CALLAHAN, C. J. In accordance with Practice Book § 73-1 and General Statutes § 52-235 (a), the trial court granted the parties' joint interlocutory motion for reservation of a question of law to the Appellate Court. We subsequently transferred the reserved question to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c). The issue framed by the parties and reserved by the trial court for advice is: "When the [s]tate is sued pursuant to its waiver of sovereign immunity in [General Statutes] § 52-556,[1] is it immune from a reallocation of damages pursuant to the provisions of [General Statutes] § 52-572h (g)[2] in the event

---

[1] General Statutes § 52-556 provides: "Any person injured in person or property through the negligence of any state official or employee when operating a motor vehicle owned and insured by the state against personal injuries or property damage shall have a right of action against the state to recover damages for such injury."

[2] General Statutes § 52-572h provides: "(a) For the purposes of this section: (1) 'Economic damages' means compensation determined by the trier of fact for pecuniary losses including, but not limited to, the cost of reasonable and necessary medical care, rehabilitative services, custodial care and loss of earnings or earning capacity excluding any noneconomic damages; (2) 'noneconomic damages' means compensation determined by the trier of fact for all nonpecuniary losses including, but not limited to, physical pain and suffering and mental and emotional suffering; (3) 'recoverable economic damages' means the economic damages reduced by any applicable findings including but not limited to set-offs, credits, comparative negligence, additur and remittitur, and any reduction provided by section 52-225a; (4) 'recoverable noneconomic damages' means the noneconomic damages reduced by any applicable findings including but not limited to set-offs, credits, comparative negligence, additur and remittitur.

"(b) In causes of action based on negligence, contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages resulting from personal injury, wrongful death or damage

that it is a liable defendant and the plaintiff is unable
to recover the damages awarded against another liable

to property if the negligence was not greater than the combined negligence of the person or persons against whom recovery is sought including settled or released persons under subsection (n) of this section. The economic or noneconomic damages allowed shall be diminished in the proportion of the percentage of negligence attributable to the person recovering which percentage shall be determined pursuant to subsection (f) of this section.

"(c) In a negligence action to recover damages resulting from personal injury, wrongful death or damage to property occurring on or after October 1, 1987, if the damages are determined to be proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for his proportionate share of the recoverable economic damages and the recoverable noneconomic damages except as provided in subsection (g) of this section.

"(d) The proportionate share of damages for which each party is liable is calculated by multiplying the recoverable economic damages and the recoverable noneconomic damages by a fraction in which the numerator is the party's percentage of negligence, which percentage shall be determined pursuant to subsection (f) of this section, and the denominator is the total of the percentages of negligence, which percentages shall be determined pursuant to subsection (f) of this section, to be attributable to all parties whose negligent actions were a proximate cause of the injury, death or damage to property including settled or released persons under subsection (n) of this section. Any percentage of negligence attributable to the claimant shall not be included in the denominator of the fraction.

"(e) In any action to which this section is applicable, the instructions to the jury given by the court shall include an explanation of the effect on awards and liabilities of the percentage of negligence found by the jury to be attributable to each party.

"(f) The jury or, if there is no jury, the court shall specify: (1) The amount of economic damages; (2) the amount of noneconomic damages; (3) any findings of fact necessary for the court to specify recoverable economic damages and recoverable noneconomic damages; (4) the percentage of negligence that proximately caused the injury, death or damage to property in relation to one hundred per cent, that is attributable to each party whose negligent actions were a proximate cause of the injury, death or damage to property including settled or released persons under subsection (n) of this section; and (5) the percentage of such negligence attributable to the claimant.

"(g) (1) Upon motion by the claimant to open the judgment filed, after good faith efforts by the claimant to collect from a liable defendant, not later than one year after judgment becomes final through lapse of time or through exhaustion of appeal, whichever occurs later, the court shall determine whether all or part of a defendant's proportionate share of the recoverable economic damages and recoverable noneconomic damages is

defendant?" We conclude that the state is not immune from reallocation of damages pursuant to § 52-572h (g) and answer the reserved question in the negative.

uncollectible from that party, and shall reallocate such uncollectible amount among the other defendants in accordance with the provisions of this subsection. (2) The court shall order that the portion of such uncollectible amount which represents recoverable noneconomic damages be reallocated among the other defendants according to their percentages of negligence, provided that the court shall not reallocate to any such defendant an amount greater than that defendant's percentage of negligence multiplied by such uncollectible amount. (3) The court shall order that the portion of such uncollectible amount which represents recoverable economic damages be reallocated among the other defendants. The court shall reallocate to any such other defendant an amount equal to such uncollectible amount of recoverable economic damages multiplied by a fraction in which the numerator is such defendant's percentage of negligence and the denominator is the total of the percentages of negligence of all defendants, excluding any defendant whose liability is being reallocated. (4) The defendant whose liability is reallocated is nonetheless subject to contribution pursuant to subsection (h) of this section and to any continuing liability to the claimant on the judgment.

"(h) (1) A right of contribution exists in parties who, pursuant to subsection (g) of this section are required to pay more than their proportionate share of such judgment. The total recovery by a party seeking contribution shall be limited to the amount paid by such party in excess of such party's proportionate share of such judgment.

"(2) An action for contribution shall be brought within two years after the party seeking contribution has made the final payment in excess of his proportionate share of the claim.

"(i) This section shall not limit or impair any right of subrogation arising from any other relationship.

"(j) This section shall not impair any right to indemnity under existing law. Where one tortfeasor is entitled to indemnity from another, the right of the indemnitee is for indemnity and not contribution, and the indemnitor is not entitled to contribution from the indemnitee for any portion of his indemnity obligation.

"(k) This section shall not apply to breaches of trust or of other fiduciary obligation.

"(l) The legal doctrines of last clear chance and assumption of risk in actions to which this section is applicable are abolished.

"(m) The family car doctrine shall not be applied to impute contributory or comparative negligence pursuant to this section to the owner of any motor vehicle or motor boat.

"(n) A release, settlement or similar agreement entered into by a claimant and a person discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the total award of damages is reduced by the

The following facts and procedural history are undisputed. On March 7, 1995, the plaintiff's decedent, Cheryl Babes, was driving her automobile westbound on Route 202 in New Hartford. Mark Brodeur, an employee of the defendant state of Connecticut (state), was driving a van westbound on Route 202 directly behind Babes' car. The vehicle being driven by Brodeur was owned and insured by the state. The named defendant, Steven Bennett, was traveling eastbound on Route 202, driving a pickup truck that was towing a flatbed trailer. The flatbed trailer became detached from Bennett's truck, crossed the center line of the road, entered the westbound lanes of Route 202 and collided with Babes' vehicle. Babes' car came to rest in the westbound lanes of Route 202. The van driven by Brodeur collided with Babes' vehicle, and Babes died as a result of the injuries she sustained in the two collisions.

The plaintiff, as administratrix of Babes' estate, subsequently filed the present wrongful death action, naming both Bennett and the state as defendants.[3] Although the state generally is immune from suit, § 52-556 provides a cause of action against the state when any person is injured through the negligence of any state employee while operating a motor vehicle owned and insured by the state. See *White* v. *Burns*, 213 Conn. 307, 312, 567 A.2d 1195 (1990) (statutory waiver of sovereign immunity). The parties have stipulated that a jury probably would return a verdict in favor of the plaintiff against Bennett. Bennett has a $20,000 liability insurance policy. The parties have agreed that Bennett has no other

amount of the released person's percentage of negligence determined in accordance with subsection (f) of this section."

[3] The original complaint also named Ernest Petrovits, Walter Arndt III and David Stoughton, the owners of Sunset Auto, as defendants. Bennett was employed by Sunset Auto at the time of the accident. The plaintiff withdrew the complaint against Petrovits, Arndt and Stoughton on July 2, 1996. The plaintiff subsequently filed an amended complaint naming only Bennett and the state as defendants.

assets that could be used to satisfy a judgment against him and that a jury probably would award the plaintiff damages that greatly exceed the $20,000 limit of Bennett's insurance policy. The parties also have agreed that, if the case were to go to trial, and the state were to be found liable, the plaintiff would seek reallocation to the state of any damages she is unable to collect from Bennett.

The parties, however, do not intend to go to trial. They have agreed to settle the matter. The amount the state is willing to pay the plaintiff depends upon whether the plaintiff is entitled to reallocate to the state any damages that cannot be collected from Bennett. The trial court deemed the resolution of this question sufficiently important to invoke the reservation procedures of Practice Book § 73-1 (e), which allow this court or the Appellate Court to answer specific reserved questions that are "reasonably certain to enter into the decision of the case, [if] it appears that their present determination would be in the interest of simplicity, directness and economy of judicial action."

Section 52-572h (g) provides that, in the event a plaintiff is unable to recover damages awarded against a particular defendant, damages are to be reallocated among other defendant tortfeasors that were found liable. At issue, therefore, is the applicability of § 52-572h (g) to an action brought against the state pursuant to § 52-556. The resolution of this issue is guided by well established principles of statutory construction. "The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding

its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citation omitted; internal quotation marks omitted.) *Bhinder* v. *Sun Co.*, 246 Conn. 223, 230–31, 717 A.2d 202 (1998).

Our analysis is more specifically illuminated by the well settled principle that when the state waives sovereign immunity by statute "a party attempting to sue under the legislative exception must come clearly within its provisions, because [s]tatutes in derogation of sovereignty should be strictly construed in favor of the state, so that its sovereignty may be upheld and not narrowed or destroyed . . . . *Berger, Lehman Associates, Inc.* v. *State*, 178 Conn. 352, 356, 422 A.2d 268 (1979). Where there is any doubt about [the] meaning or intent [of a statute in derogation of sovereign immunity, it is] given the effect which makes the least rather than the most change in sovereign immunity. *White* v. *Burns*, supra, 213 Conn. 312." (Internal quotation marks omitted.) *Federal Deposit Ins. Corp.* v. *Peabody, N.E., Inc.*, 239 Conn. 93, 101–102, 680 A.2d 1321 (1996). "The state's sovereign right not to be sued may be waived by the legislature, provided clear intention to that effect is disclosed by the use of express terms or by force of a necessary implication." (Internal quotation marks omitted.) *Struckman* v. *Burns*, 205 Conn. 542, 558, 534 A.2d 888 (1987).

The parties do not dispute that the negligence of Bennett and Brodeur proximately caused Babes' injuries. Nor do they dispute that the state may be liable pursuant to § 52-556. The plaintiff contends, moreover, that the state's liability pursuant to § 52-556 for damages for those injuries is governed by the provisions of § 52-572h, particularly the reallocation provisions of § 52-572h (g). The state maintains, in contrast, that § 52-572h (g) does not apply to actions brought against the

state pursuant to § 52-556 and, therefore, does not govern the award of damages in such actions. We agree with the plaintiff.

Before addressing the effect that § 52-572h (g) has in an action brought pursuant to § 52-556, we first must determine the nature of the cause of action that may be brought against the state pursuant to § 52-556. Our inquiry begins with the language of § 52-556, which has remained substantially unchanged since the statute first was enacted in 1927. See Public Acts 1927, c. 209. Section 52-556 provides in relevant part that "[a]ny person injured . . . through the *negligence* of any state official or employee when operating a motor vehicle owned and insured by the state . . . shall have a right of action against the state . . . ." (Emphasis added.) With the enactment of § 52-556, therefore, the state expressly waived sovereign immunity in motor vehicle *negligence* actions; *Capers* v. *Lee*, 239 Conn. 265, 273, 684 A.2d 696 (1996); and specifically consented to suits based on "negligence." The legislature's use of the term "negligence" in § 52-556 manifests the obvious intention of the legislature to consent to suit against the state based on the breach of a common-law duty of care in the operation of state owned and insured vehicles by state employees and officials. See *Sullivan* v. *State*, 189 Conn. 550, 555 n.7, 457 A.2d 304 (1983) (§ 52-556 permits recovery against state on theory of vicarious liability for certain negligent acts by its agents, "a common-law liability borne by private employers").[4] Because

---

[4] Cf. *White* v. *Burns*, supra, 213 Conn. 322–23 (legislature's use of terms "neglect" and "default" rather than "negligence" in statutory waiver of sovereign immunity pursuant to General Statutes § 13a-144 indicated that legislature intended to provide for liability based on breach of statutory duty, rather than liability based on common-law negligence).

General Statutes § 13a-144 provides in relevant part: "Any person injured in person or property through the *neglect* or *default* of the state or any of its employees by means of any defective highway, bridge or sidewalk which it is the duty of the Commissioner of Transportation to keep in repair, or by reason of the lack of any railing or fence on the side of such bridge or

the language of § 52-556 expressly waives the state's immunity from suit based on common-law negligence, it appears that the legislature intended § 52-556 to incorporate the principles governing existing common-law negligence actions, and that the statute was not intended to create a separate statutory action to which different principles of liability and damages would apply.

We previously have distinguished between a waiver of immunity from suit and a waiver of immunity from liability for certain elements of damages. Specifically, we have concluded that the state's waiver of immunity from suit in General Statutes § 13a-144; see footnote 4 of this opinion; the defective highway statute, is not an implicit waiver of the state's immunity from liability for prejudgment interest;[5] *Struckman* v. *Burns*, supra, 205 Conn. 559–60; or taxation of costs.[6] *State* v. *Chapman*, 176 Conn. 362, 366, 407 A.2d 987 (1978); *State ex rel. Foote* v. *Bartholomew*, 111 Conn. 427, 432, 150 A. 308 (1930); *State* v. *Anderson*, 82 Conn. 392, 394, 73 A. 751 (1909).

Those conclusions, however, are based on the understanding that, if the legislature waives sovereign immunity by creating a separate statutory cause of action against the state, the parameters of that cause of action

---

part of such road which may be raised above the adjoining ground so as to be unsafe for travel or, in case of the death of any person by reason of any such neglect or default, the executor or administrator of such person, may bring a civil action to recover damages sustained thereby against the commissioner in the Superior Court. . . ." (Emphasis added.)

[5] General Statutes (Rev. to 1987) § 52-192a (b) provides in relevant part: "If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain stated in his 'offer of judgment,' the court shall add to the amount so recovered twelve per cent annual interest on said amount, computed from the date . . . the complaint in the civil action was filed with the court . . . ."

[6] General Statutes (Rev. to 1977) § 52-257 provides in relevant part that "[t]he prevailing party in any such civil action . . . shall receive [costs] . . . ."

must be strictly construed. Moreover, the statute should not be read so as to have implicitly waived the state's immunity from the imposition, pursuant to separate and distinct statutes, of damages or costs in excess of those damages expressly authorized in the statute creating the cause of action. Compensatory damages recovered pursuant to § 52-556, however, may be recovered by virtue of a common-law negligence cause of action with respect to which the state's immunity has been waived, not by a statutorily created cause of action that must be closely circumscribed. In other words, § 52-556 does not create a heretofore unrecognized cause of action, but instead is a waiver that permits an already established common-law negligence action to be brought against the state.

We turn our attention, therefore, to the rules that governed negligence actions when the legislature enacted § 52-556. Section 52-556 initially was enacted in 1927; see Public Acts 1927, c. 209; and has remained substantially unchanged since that time. "Prior to October 1, 1986, this state adhered to the rules of joint and several liability with no contribution among joint tortfeasors. This doctrine can be stated succinctly. 'If the illegal conduct of each of the defendants was a proximate cause of the collision, they would be liable jointly and severally, the plaintiff would have a right to recover the entire amount of damages awarded from either, and, if he did so, the defendant paying them would have no right of contribution against the other; or the plaintiff might have sued either alone, and of course in the event of a recovery, that one would have been compelled to pay the entire amount of damages.' *Rose* v. *Heisler*, 118 Conn. 632, 633, 174 A. 66 (1934)." *Donner* v. *Kearse*, 234 Conn. 660, 666, 662 A.2d 1269 (1995). Thus, because joint and several liability was the rule governing damages in negligence actions generally at the time of the enactment of § 52-556, the statute

subjected the state to joint and several liability. In fact, in *Fairbanks* v. *State*, 143 Conn. 653, 124 A.2d 893 (1956), a wrongful death action in which the state was named a defendant pursuant to a waiver of immunity under § 52-556, we affirmed a jury verdict for $75,000 against multiple defendants, including the state. A state employee, driving a car owned and insured by the state, negligently collided with the car of the plaintiff's decedent, resulting in the death of the plaintiff's decedent. Id., 654. A jury determined that the state and two other defendants were jointly and severally liable for payment of damages of $75,000. Id., 655. On appeal, all three defendants claimed the jury award was excessive. Id. We concluded that the trial court did not improperly refuse to set aside the verdict. Id., 658–61. By implication, we previously have recognized, therefore, that the state may be held jointly and severally liable for damages in an action brought pursuant to § 52-556. Id.

To summarize, we conclude that, when the legislature enacted § 52-556, it intended that the substantive rules governing negligence actions generally would apply to actions brought pursuant to § 52-556. Because, at that time, the rules of joint and several liability governed negligence actions, the state, in an action brought against it pursuant to § 52-556, could be held responsible for the entire amount of damages awarded, rather than simply its proportionate share of such damages, even if there were solvent codefendants who were also liable.

In 1986, however, with the enactment of tort reform legislation, the legislature adopted comparative negligence principles, and, consequently, the rules of joint and several liability no longer govern common-law negligence actions in Connecticut.[7] We are required, therefore, to consider the effect that the comparative

---

[7] With the enactment of the Tort Reform Act of 1986; Public Acts 1986, No. 86-338, § 3, codified in part under General Statutes (Rev. to 1987) § 52-

negligence statute, § 52-572h, has on negligence actions brought against the state pursuant to § 52-556.

The state argues that it is immune from the reallocation provisions of § 52-572h (g). Specifically, the state maintains that the proportionate share of damages caused by a third party tortfeasor, Bennett, operating a vehicle not owned or insured by the state, should not be allocated to the state pursuant to § 52-572h (g) in the absence of an express statutory waiver of sovereign immunity for that specific purpose. The plaintiff, however, argues that, because the state has waived its immunity from suit for common-law negligence pursuant to § 52-556, the state is subject to the provisions of § 52-572h (g) of the comparative negligence statute concerning reallocation of uncollectible damages. The plaintiff contends that it would be illogical to allow the state to benefit from the apportionment provisions of § 52-572h (c) when there are multiple liable defendants, but not to subject the state to the reallocation provisions of § 52-572h (g) when a liable codefendant is insolvent. We agree with the plaintiff.

Our analysis begins with the language of the operative statutory provisions. Section 52-572h (c) provides in relevant part that "[i]n a *negligence action* to recover damages resulting from . . . wrongful death . . . if the damages are determined to be proximately caused by the *negligence* of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for his proportionate share of the recoverable economic damages and the recoverable noneconomic damages *except as provided in subsection (g) of this section.*" (Emphasis added.) Section 52-572h applies specifically to *negligence* actions. Consequently, because § 52-556 permits a cause of action

---

572h; the legislature adopted comparative negligence principles for negligence actions. Those tort reform provisions were later amended by Public Acts 1987, No. 87-227, § 3. See footnote 2 of this opinion.

against the state based on negligence, an action brought pursuant to § 52-556 is a "negligence action" to which the comparative negligence principles of § 52-572h apply. Therefore, in such actions, unless § 52-572h (g) provides otherwise, § 52-572h (c) provides that a defendant whose conduct proximately caused the injury is liable solely for his proportionate share of damages.

We next consider the effect that the reallocation provisions of § 52-572h (g) have on actions brought against the state pursuant to § 52-556. Section 52-572h (g) (1) provides in relevant part that "the court shall determine whether all or part of a defendant's proportionate share of the recoverable economic damages and recoverable noneconomic damages is uncollectible from that party, and shall reallocate such uncollectible amount among the other defendants in accordance with the provisions of this subsection. . . ." Thus, not only does § 52-572h (c) directly refer to § 52-572h (g), but both § 52-572h (c) and (g) address a party's liability for a "proportionate share of the recoverable economic damages and [the] recoverable noneconomic damages . . . ."

The state argues that although the reference in § 52-572h (c) to the "proportionate share of the recoverable economic damages and recoverable noneconomic damages" applies to *all* liable defendants, the same language in § 52-572h (g) applies to all liable defendants *except the state*. Although it is not completely implausible that, in order to preserve the state's fisc, the legislature intended that the state be permitted to apportion damages to other liable codefendants pursuant to § 52-572h (c), and to avoid reallocation of damages under § 52-572h (g) if a liable codefendant is insolvent, we "must interpret a statute as written . . . and it is to be considered as a whole, with a view toward reconciling its separate parts in order to render a reasonable overall interpretation." (Internal quotation marks omitted.) *Hall Manor Owner's Assn.* v. *West Haven*, 212 Conn.

147, 154, 561 A.2d 1373 (1989). There is nothing in the language of § 52-572h (c) and (g) to indicate that the legislature intended that the phrase "proportionate share of the recoverable economic damages and [the] recoverable noneconomic damages" apply to all defendants in § 52-572h (c), but apply to all defendants *except the state* in § 52-572h (g).

Furthermore, the legislative history and genealogy of § 52-572h (c) and (g) indicate that § 52-572h (g) was intended to apply to the state as well as to all other liable defendants. Section 52-572h (c) was enacted as part of the Tort Reform Act of 1986 (Tort Reform I); Public Acts 1986, No. 86-338, § 3; partially in response to concerns that, under the common-law rule of joint and several liability, a defendant who was only slightly at fault "could be held responsible for the entire amount of damages, as long as his negligence was a proximate cause of the plaintiff's injuries." *Donner* v. *Kearse*, supra, 234 Conn. 667; see *Biro* v. *Hill*, 214 Conn. 1, 6, 570 A.2d 182 (1990). Public Acts 1986, No. 86-338, § 3 (c), which was codified as General Statutes (Rev. to 1987) § 52-572h (c), provides in relevant part that "in a negligence action . . . if the damages are determined to be proximately caused by the negligence of more than one *person*, each *person* against whom recovery is allowed shall be liable to the claimant only for his proportionate share of the recoverable economic damages and the recoverable noneconomic damages . . . ." (Emphasis added.) Thus, under Tort Reform I, in determining the percentage of damages attributable to a particular defendant, the trier of fact was able to take into account the percentage of damages attributable to any other person, even if that person was not a party to the suit. A plaintiff was unable, however, to recover complete compensation for his injuries unless every person whose negligence proximately caused the

injuries was a party to the suit. The share of damages attributable to nonparties was not recoverable.

The legislature amended § 52-572h (c) just one year later when it enacted Public Acts 1987, No. 87-227, § 3 (P.A. 87-227). Commonly referred to as Tort Reform II, P.A. 87-227, § 3 (c), provides in relevant part that "[i]n a negligence action . . . if the damages are determined to be proximately caused by the negligence of more than one *party*, each *party* against whom recovery is allowed shall be liable to the claimant only for his proportionate share of the recoverable economic damages and the recoverable noneconomic damages except as provided in subsection (g) of this section." (Emphasis added.) Thus, the intent of P.A. 87-227 was to limit the universe of negligent persons that a finder of fact may consider in apportioning damages to only those entities that are either *parties* to the suit or *parties* who have reached a settlement agreement with the plaintiff[8]—a clear indication that the legislature intended that § 52-572h (c) permit the plaintiff to obtain, to the maximum extent possible, complete compensation for his injuries.

The legislative history of P.A. 87-227 also indicates that the legislature intended to maximize the plaintiff's ability to recover damages from the parties whose negligence caused his injuries. Section 3 (g) (1) of P.A. 87-227 which was codified as § 52-572h (g), provides in relevant part that "after good faith efforts by the claimant to collect from a liable defendant . . . the court shall determine whether all or part of a defendant's proportionate share of the recoverable economic damages and recoverable noneconomic damages is uncollectible from that party, and shall reallocate such uncollectible amount among the other defendants . . . ."

---

[8] See General Statutes § 52-572h (n) (plaintiff's total damages reduced by amount of released person's percentage of negligence).

During the discussion on the floor of the Senate on Substitute Senate Bill No. 1015, which eventually was enacted as P.A. 87-227, § 3, and codified as § 52-572h, Senator Anthony V. Avallone remarked that under the bill, "so long as there is a solvent party who participated in a negligent act which resulted in damages," the plaintiff would be entitled to a reallocation of economic damages. 30 S. Proc., Pt. 6, 1987 Sess., pp. 1936–37. Similarly, during the debate on the floor of the House of Representatives on Substitute Senate Bill No. 1015, Representative Richard D. Tulisano remarked that Tort Reform II "makes it clear that . . . a victim in our society [will] be able to collect all of their out-of-pocket costs [from] people who committed torts against them. . . . [T]hose that are at fault, will be responsible . . . ." 30 H.R. Proc., Pt. 16, 1987 Sess., pp. 5649–50. Thus, the legislative history of § 52-572h (g) manifests the legislature's intention that a plaintiff in a negligence action be able to reallocate damages awarded against an insolvent defendant to other parties to the action whose negligence caused the plaintiff's injuries.

The legislature has made clear that, as between a victim and the negligent defendants, it is the defendants who should bear the risk that a tortfeasor is insolvent. The state has not pointed to any provision of the language or legislative history of § 52-572h (g) that suggests that the legislature intended to exempt the state from reallocation of damages pursuant to § 52-572h (g), nor has our independent research uncovered any such authority. On the basis of the language, legislative history and lineage of § 52-572h, we conclude, therefore, that the reallocation provisions of § 52-572h (g) were intended to apply to the state in the same manner that they apply to every other defendant. Consequently, in an action brought against the state pursuant to § 52-556, the state is subject to the comparative negligence

rules of § 52-572h, including the reallocation provisions of § 52-572h (g).

In conclusion, we note that, in situations in which the plaintiff's injuries were caused by the negligence of more than one party, the comparative negligence rules of § 52-572h benefit the defendants, as well as the plaintiff. Prior to 1986, under the rules of joint and several liability, when multiple defendants caused the plaintiff's injuries, the state could have been the "deep pocket" defendant in an action brought against it pursuant to § 52-556. See *Fairbanks* v. *State*, supra, 143 Conn. 653. Under the comparative negligence statute, however, liability is apportioned among the tortfeasors, and each defendant is responsible to the plaintiff only for its proportionate share of recoverable damages. See General Statutes § 52-572h (c). Although the state is subject to reallocation of damages pursuant to § 52-572h (g) when a codefendant is insolvent, its liability after reallocation often will be less, and never will exceed, its liability under the rules of joint and several liability.[9]

The reserved question is answered "no."

No costs will be taxed in this court to either party.

In this opinion the other justices concurred.

---

[9] We also note that a right of contribution exists for parties who, because of reallocation, have paid more than their proportionate shares of damages. See General Statutes § 52-572h (g) (4) and (h). Thus, the state could seek contribution against any party whose proportionate share was reallocated to the state. Section 52-572h (h) gives a party who has paid more than its proportionate share of damages a right of contribution from the other defendant in the amount paid in excess of that party's proportionate share of the claim.