******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# RONALD G. CAVERLY, ADMINISTRATOR (ESTATE OF JAMES B. CAVERLY) *v.* STATE OF CONNECTICUT
## (SC 20577)

Robinson, C. J., and McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.

*Syllabus*

Pursuant to statute ((Rev. to 2017) § 4-160b (a)), "[t]he Office of the Claims Commissioner shall not accept or pay any subrogated claim or any claim directly or indirectly paid by or assigned to a third party."

The plaintiff, the administrator of the estate of the decedent, J, sought to recover damages from the state for the allegedly wrongful death of J, who died while under the medical care of certain of the state's employees at a state university hospital. The plaintiff had filed a notice of claim with the claims commissioner, seeking permission to bring a medical malpractice action against the state for the alleged negligence of those state employees in prescribing certain medications to J, which allegedly resulted in J's death. Before the plaintiff received a decision from the claims commissioner, however, he filed a separate negligence action against the pharmacy that had filled J's prescriptions, C Co., and certain of C Co.'s corporate affiliates. Thereafter, the plaintiff received authorization from the claims commissioner and commenced the present action. Subsequently, the plaintiff's action against C Co. was settled for $2 million. The state then moved to dismiss the present action for lack of subject matter jurisdiction on the ground of sovereign immunity, claiming that, in light of the settlement with C Co., the medical malpractice claim against the state had been "indirectly paid by . . . a third party" within the meaning of § 4-160b (a). The trial court denied the state's motion to dismiss, concluding that § 4-160b (a) applies only to subrogated or assigned claims and not to payments made by joint tortfeasors. On appeal from the trial court's denial of the state's motion to dismiss, *held* that the trial court correctly determined that the plaintiff's medical malpractice claim against the state was not "indirectly paid by . . . a third party" within the meaning of § 4-160b (a) by virtue of the plaintiff's settlement with C Co., and, accordingly, this court upheld the trial court's denial of the state's motion to dismiss: the plaintiff's medical malpractice claim against the state was not paid indirectly by a third party when C Co. paid the plaintiff $2 million to settle the plaintiff's action against C Co., as this court previously had concluded that the term "claim," which is defined in relevant part by statute (§ 4-141 (1)) as "a petition for the payment or refund of money by the state," must be read to refer to claims for monetary damages against the state, the negligence action against C Co. was not a "claim," as defined by § 4-141 (1), because it was an attempt to recover monetary damages from a private corporation for its own independent acts of alleged negligence in causing J's death instead of a request for monetary damages from the state, and the settlement proceeds the plaintiff received in the plaintiff's action against C Co. constituted a direct payment to the plaintiff in satisfaction of the plaintiff's separate and distinct claim for monetary damages against C Co.; moreover, the common-law prohibition against double recovery, which precludes a plaintiff from recovering twice for a single loss, did not bar the plaintiff's claim against the state, as the amount of the plaintiff's loss had not been adjudicated on the merits, a judgment in damages had not been rendered in favor of the plaintiff, and no such judgment had been paid in full; furthermore, a plaintiff's settlement with one tortfeasor does not necessarily represent the plaintiff's fair, just and reasonable damages or constitute full compensation for the entire amount of his loss, and, to the extent the state believed that the plaintiff had been fully compensated for J's death in light of the settlement with C Co., the state could file a notice of apportionment or introduce evidence of that settlement in a trial to the court.

Argued October 18, 2021—officially released February 9, 2022*

*Procedural History*

Action to recover damages for the defendant's alleged negligence, brought to the Superior Court in the judicial district of Hartford, where the court, *Noble, J.*, denied the defendant's motion to dismiss, and the defendant appealed. *Affirmed.*

*Michael G. Rigg*, with whom, on the brief, was *Robert D. Silva*, for the appellant (defendant).

*Marc J. Ubaldi*, with whom, on the brief, were *Leslie Gold McPadden* and *Adele R. Jacobs*, for the appellee (plaintiff).

*Opinion*

ECKER, J. The decedent, James B. Caverly, died while under the medical care of the employees of the John Dempsey Hospital at the University of Connecticut Health Center. The plaintiff, Ronald G. Caverly, administrator of the decedent's estate, subsequently received authorization from the Office of the Claims Commissioner to file a medical malpractice action against the defendant, the state of Connecticut, doing business as UCONN Health Center/John Dempsey Hospital, pursuant to General Statutes (Rev. to 2017) § 4-160 (b).[1] The plaintiff filed the present medical malpractice action, which the state moved to dismiss on the basis of sovereign immunity. The state argued that, because the plaintiff had received a settlement payment from a joint tortfeasor[2] in connection with the decedent's death, the plaintiff's action was barred by General Statutes § 4-160b (a), which provides that "[t]he Office of the Claims Commissioner shall not accept or pay any subrogated claim or any claim directly or indirectly paid by or assigned to a third party." The trial court denied the state's motion to dismiss on the ground that § 4-160b (a) applies only to subrogated or assigned claims and not to payments made by joint tortfeasors. We affirm the trial court's denial of the state's motion to dismiss.

The operative complaint alleges the following relevant facts.[3] On December 5, 2016, the doctors and/or nurses at John Dempsey Hospital prescribed warfarin, an anticoagulant medication, to the decedent. The prescription was filled at a CVS Pharmacy in Mansfield. According to the instructions printed on the prescription label, the decedent was directed to "take four and one-half 3 milligram tablets on Monday and Thursday and three 3 milligram tablets on the other days of the week." On December 8, 2016, the decedent was seen at the anticoagulation clinic at John Dempsey Hospital, at which time "he was directed to take the warfarin 3 milligram, four days per week, and the warfarin [4.5] milligram three days per week."

On December 16, 2016, the decedent returned to the anticoagulation clinic, complaining of "bruising and swelling on his arm and elbow, indicative of recent bleeding." The decedent's international normalized ratio (INR)[4] was tested, "which revealed that his INR was greater than 8, with normal limits considered to be between 2 and 3." The decedent underwent a second blood test to ascertain a more specific INR value. "The [second] blood test documented an INR result that was dangerously high at 14.1. . . . As a result of the dangerously high INR level, the . . . decedent was instructed to [stop taking] the warfarin and to return to the anticoagulation clinic on December 19, 2016, for a repeat INR test, and to go to the emergency room if any bleeding event occurred." Additionally, the decedent was prescribed one 5 milligram dose of vitamin K. Two days

later, after taking the vitamin K, the decedent "was taken emergently to Hartford Hospital," where he "died from hemorrhagic complications of Coumadin/warfarin administration from his blood being too thin."

On December 14, 2017, the plaintiff filed a notice of claim with the claims commissioner, alleging that "employees of the state of Connecticut employed by the John Dempsey Hospital at the University of Connecticut Health Center deviated from the standard of care . . . while [the decedent] was a patient [at] the hospital," resulting "in the decedent experiencing a hemorrhage that caused his death." Attached to the plaintiff's notice of claim was "a certificate of good faith and an opinion letter in accordance with [General Statutes] § 52-190a." The claims commissioner granted the plaintiff "permission to sue the state of Connecticut for damages of up to $5 million for acts of alleged medical negligence" in accordance with § 4-160 (b). The plaintiff thereafter filed the present medical malpractice action against the state.

Meanwhile, in March, 2019, prior to receiving a decision from the claims commissioner, the plaintiff had filed an action in the Superior Court against CVS Pharmacy and certain of its corporate affiliates (collectively, CVS Pharmacy), alleging that CVS Pharmacy's negligence in filling the decedent's warfarin and vitamin K prescriptions caused the decedent's death. See *Caverly* v. *CVS Health Corp.*, Superior Court, judicial district of Rockville, Docket No. TTD-CV19-6017238-S (March 22, 2019) (CVS action). The CVS action, which was removed to federal court, settled in January, 2020, for $2 million.

On June 30, 2020, the state moved to dismiss the present case for lack of subject matter jurisdiction, arguing that the plaintiff's receipt of the settlement funds in the CVS action vitiated the claims commissioner's grant of authorization allowing the plaintiff to sue the state. Specifically, the state claimed that, in light of the settlement, the plaintiff's medical malpractice claim against the state had been "indirectly paid by . . . a third party" within the meaning of § 4-160b (a).

The plaintiff opposed the state's motion to dismiss, arguing that § 4-160b (a) was inapplicable to the present case because the plaintiff's medical malpractice claim against the state had not been subrogated or assigned to a third party and was separate and distinct from its claim against CVS Pharmacy. Alternatively, the plaintiff argued that the timing of the claims commissioner's authorization to sue the state was dispositive of the state's motion because "the claims commissioner granted permission to sue *before* the settlement was paid," and, therefore, "the claims commissioner accepted a claim that was at the most payable, rather than paid," under § 4-160b (a). (Emphasis in original.)

The trial court denied the state's motion to dismiss. The court found that the plain language of § 4-160b (a) demonstrated "that the legislature meant simply to limit its waiver of sovereign immunity by excluding from its application subrogees and assignees of claims." The trial court observed that "[t]he statute is silent as to any subsequent forfeiture or revocation of the claim upon payment by a joint tortfeasor" and concluded that, "if the legislature intended to either require the absence of joint tortfeasors before a claim is accepted, or to withdraw a waiver of sovereign immunity upon the payment of a common harm or injury by such joint tortfeasor, it could have done so but did not." Accordingly, the trial court concluded that the plaintiff's medical malpractice action was not barred by the doctrine of sovereign immunity. The state appealed from the decision of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.[5]

It is well established that "[t]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. . . . A determination regarding a trial court's subject matter jurisdiction is a question of law," over which we exercise plenary review. (Citation omitted; internal quotation marks omitted.) *Miller* v. *Egan*, 265 Conn. 301, 313, 828 A.2d 549 (2003). More specifically, whether § 4-160b (a) waives the state's sovereign immunity with respect to a claim for damages against the state when the plaintiff has received or will receive compensation for his or her loss by way of a settlement with a joint tortfeasor is a question of law subject to plenary review. See, e.g., *Graham* v. *Commissioner of Transportation*, 330 Conn. 400, 416, 195 A.3d 664 (2018) (whether statute operates as waiver of sovereign immunity is "a question of statutory construction that constitutes a question of law over which our review is plenary").

To ascertain the meaning of § 4-160b (a), we apply the principles of statutory construction set forth in General Statutes § 1-2z. See, e.g., *Boisvert* v. *Gavis*, 332 Conn. 115, 141–42, 210 A.3d 1 (2019). We are also guided by the "principle that statutes in derogation of sovereign immunity should be strictly construed. . . . [When] there is any doubt about their meaning or intent they are given the effect [that] makes the least rather than the most change in sovereign immunity." (Emphasis omitted; internal quotation marks omitted.) *Envirotest Systems Corp.* v. *Commissioner of Motor Vehicles*, 293 Conn. 382, 388, 978 A.2d 49 (2009).

Section 4-160b (a) provides that "[t]he Office of the Claims Commissioner shall not accept or pay any subrogated claim or any claim directly or indirectly paid by or assigned to a third party." It is undisputed that the plaintiff's medical malpractice claim against the state was not "subrogated" or "assigned to a third party."

Instead, the parties dispute whether the plaintiff's medical malpractice claim against the state was indirectly paid by a third party when CVS Pharmacy paid the plaintiff $2 million to settle the CVS action.[6]

Chapter 53 of the General Statutes, entitled "Claims Against the State," defines the term "claim" as "a petition for the payment or refund of money *by the state* or for permission to sue *the state* . . . ." (Emphasis added.) General Statutes § 4-141 (1);[7] see General Statutes § 4-141 (2) (defining "just claim" as "a claim which in equity and justice *the state should pay*, provided *the state* caused damage or injury or has received a benefit" (emphasis added)); see also General Statutes § 4-165 (a) (providing that "[a]ny person having a complaint for" damage caused by state officer or employee "in the discharge of his or her duties or within the scope of his or her employment . . . shall present it as *a claim against the state* under the provisions of this chapter" (emphasis added)). As we explained in *Bloom* v. *Gershon*, 271 Conn. 96, 856 A.2d 335 (2004), "chapter 53 pertains exclusively to claims for monetary damages against the state, and, therefore, any reference to the word 'claim' in chapter 53 must be read to refer to claims for monetary damages" against the state. Id., 112. Thus, "§ 4-141 [1], which defines the word 'claim' as a petition 'for permission to sue the state,' as well as a petition for the payment or refund of money by the state, by virtue of pertaining to the provisions of chapter 53, necessarily means a petition for permission to sue *the state* for the payment or refund of money." (Emphasis altered.) Id., 112–13.

The plaintiff's negligence action against CVS Pharmacy was not a "claim," as defined by § 4-141 (1), because it was not a request for monetary damages from the state. Instead, in the CVS action, the plaintiff sought monetary damages from CVS Pharmacy, a private corporation, for its own independent acts of alleged negligence in causing the decedent's death. Thus, the settlement proceeds that the plaintiff received in the CVS action did not constitute an indirect payment of the plaintiff's claim for monetary damages against the state but, rather, constituted a direct payment to the plaintiff in satisfaction of the plaintiff's claim for monetary damages against CVS Pharmacy. Because the plaintiff's claims against CVS Pharmacy and the state are separate and distinct, we conclude that the plaintiff's medical malpractice claim in the present case was not "indirectly paid by . . . a third party" within the meaning of § 4-160b (a).

The state contends that the term "claim" in § 4-160b (a) must be construed consistently with the common-law prohibition on double recovery, which precludes a plaintiff from recovering twice for a single loss.[8] We agree with the state that the plaintiff may not recover double damages for the death of the decedent under

"the simple and time-honored maxim that [a] plaintiff may be compensated only once for his just damages for the same injury." (Internal quotation marks omitted.) *Gionfriddo* v. *Gartenhaus Cafe*, 211 Conn. 67, 71, 557 A.2d 540 (1989). We disagree, however, that our construction of § 4-160b (a) permits a double recovery.

As we recently explained in *Meribear Productions, Inc.* v. *Frank*, 340 Conn. 711,     A.3d    (2021), "[p]laintiffs are not foreclosed from suing multiple defendants, either jointly or separately, for injuries for which each is liable, nor are they foreclosed from obtaining multiple judgments against joint [or successive] tortfeasors. . . . This rule is based on the sound policy that seeks to ensure that parties will recover for their damages. . . . The possible rendition of multiple judgments does not, however, defeat the proposition that a litigant may recover just damages only once. . . . Double recovery is foreclosed by the rule that only one satisfaction may be obtained for a loss that is the subject of two or more judgments. . . . In general, a loss is satisfied when a judgment . . . rendered in favor of the plaintiff in compensation for the loss has been paid in full." (Citations omitted; internal quotation marks omitted.) Id., 749–50. In the present case, the amount of the plaintiff's loss has not been adjudicated on the merits, a damages judgment has not been rendered in favor of the plaintiff, and no such judgment has been paid in full. Compare id., 751–52 (plaintiff's action against coobligors was not barred by double recovery rule because "[i]t is undisputed that the plaintiff's loss was wholly unsatisfied when the trial court rendered judgment"), with *Gionfriddo* v. *Gartenhaus Cafe*, supra, 211 Conn. 69, 75 (plaintiff's second action against joint tortfeasor was barred by double recovery rule because, "[a]fter a jury trial, the plaintiff received compensatory, exemplary and treble damages in the amount of $1,187,763 . . . and the defendants therein . . . satisfied that judgment in full" (citation omitted)). Accordingly, the prohibition against double recovery does not bar the plaintiff's medical malpractice claim against the state.

We recognize that the plaintiff received $2 million from CVS Pharmacy as compensation for the death of the decedent. "A plaintiff's settlement with one tortfeasor in a multitortfeasor context, however, does not necessarily represent a claimant's fair, just and reasonable damages but, rather, represents, in part, the parties' assessments of the risks of litigation. Once having undertaken to bargain regarding those risks, the plaintiff receives the benefit or burden of the settlement." *Collins* v. *Colonial Penn Ins. Co.*, 257 Conn. 718, 735–36, 778 A.2d 899 (2001); see *Black* v. *Goodwin, Loomis & Britton, Inc.*, 239 Conn. 144, 168, 681 A.2d 293 (1996) ("[w]hen an award is made pursuant to a settlement . . . the underlying issues have not been fully and fairly litigated, and, therefore, the earlier award can have no preclusive effect on a subsequent action"). A negotiated

settlement "represent[s] a surrender of a cause of action, perhaps for a consideration less than the injury received"; it does not equate to a satisfaction of a judgment "represent[ing] full compensation for injuries." *Gionfriddo* v. *Gartenhaus Cafe*, supra, 211 Conn. 74 n.8. Accordingly, the settlement the plaintiff received in the CVS action does not necessarily constitute full compensation for the entire amount of the plaintiff's loss.

To the extent that the state believes that the plaintiff has been fully compensated for the death of the decedent, it is not without recourse. The state, like any other litigant in a negligence action seeking damages for personal injury, wrongful death or property damage, may at the appropriate time file a notice of apportionment pursuant to General Statutes §§ 52-572h (c)[9] and 52-102b (c),[10] or introduce evidence of the plaintiff's settlement with a joint tortfeasor in a trial to the court[11] pursuant to General Statutes §52-216a.[12] We therefore reject the state's argument that our construction of § 4-160b (a) permits the plaintiff to recover twice for a single loss, in violation of the prohibition against double recovery.

The trial court's denial of the state's motion to dismiss is affirmed.

In this opinion the other justices concurred.

* February 9, 2022, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] Hereinafter, all references to § 4-160 are to the 2017 revision.

[2] "Joint tortfeasors are persons who have acted in concert in committing the wrong or have engaged in independent conduct that has united to cause a single injury, thus making them jointly and severally liable for the wrongful conduct." *Robbins* v. *Physicians for Women's Health, LLC*, 311 Conn. 707, 720–21, 90 A.3d 925 (2014).

[3] "In reviewing a denial of a motion to dismiss, we take the facts as expressly set forth, and necessarily implied, in the plaintiff's complaint, construing them in the light most favorable to the pleader." (Internal quotation marks omitted.) *Envirotest Systems Corp.* v. *Commissioner of Motor Vehicles*, 293 Conn. 382, 385, 978 A.2d 49 (2009).

[4] INR "is the standard by which the anticoagulant activity of warfarin therapy is monitored." K. Anderson & K. Smith, "Anticoagulants and Antiplatelet Agents," in Lippincott Illustrated Reviews: Pharmacology (K. Whalen et al. eds., 7th Ed. 2019) p. 279.

[5] Although the denial of a motion to dismiss generally is a nonappealable interlocutory ruling, "[t]he denial of a motion to dismiss based on a colorable claim of sovereign immunity, by contrast, is an immediately appealable final judgment because the order or action so concludes the rights of the parties that further proceedings cannot affect them." (Internal quotation marks omitted.) *Miller* v. *Egan*, 265 Conn. 301, 303 n.2, 828 A.2d 549 (2003). We have explained that "a colorable claim is one that is superficially well founded but that may ultimately be deemed invalid . . . . For a claim to be colorable, the defendant need not convince the . . . court that he necessarily will prevail; he must demonstrate simply that he *might* prevail." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Sena* v. *American Medical Response of Connecticut, Inc.*, 333 Conn. 30, 45, 213 A.3d 1110 (2019). The plaintiff does not dispute that the state has raised a colorable claim of sovereign immunity under § 4-160b (a).

[6] We note that § 4-160b applies only to the claims commissioner's "accept[ance] or pay[ment]" of a claim. General Statutes § 4-160b (a). The claims commissioner did not pay the plaintiff's claim, and, therefore, the statute is applicable to the present case only if the claims commissioner accepted the plaintiff's claim. The plaintiff does not challenge the state's contention that the claims commissioner accepted the plaintiff's claim by granting the plaintiff authorization to sue the state. There is no occasion for us to address

the state's argument that permission to sue the state constitutes the claims commissioner's "acceptance" of a claim under these circumstances.

[7] Section 4-141 was the subject of amendments in 2018. See Public Acts 2018, No. 18-50, § 25. They have no bearing on this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[8] The state also claims that § 4-160b (a) should be construed to preserve the common-law rule that "a release of one joint tortfeasor operated as a release of all joint tortfeasors." *Sims* v. *Honda Motor Co., Ltd.*, 225 Conn. 401, 406, 623 A.2d 995 (1993). The state recognizes that this common-law rule was abrogated by General Statutes § 52-572e, which provides in relevant part that a release of one joint tortfeasor "does not discharge the other tortfeasors unless, and only to the extent, the release so provides"; General Statutes § 52-572e (b); but contends that the legislature, in enacting § 4-160b (a), intended to exempt the claims commissioner's waiver of sovereign immunity from the operation of § 52-572e. We reject this claim because, as we previously explained, the term "claim" in § 4-160b (a) plainly and unambiguously refers only to a plaintiff's request for monetary damages from the state for injury or loss caused by the state through the action or inaction of its agencies, officers, or employees. Nothing in the statute refers, either explicitly or implicitly, to the release of joint tortfeasors or § 52-572e. In light of the plain and unambiguous language of § 4-160b (a), we decline to adopt the state's proffered construction of the statute.

[9] General Statutes § 52-572h (c) provides that, "[i]n a negligence action to recover damages resulting from personal injury, wrongful death or damage to property occurring on or after October 1, 1987, if the damages are determined to be proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for such party's proportionate share of the recoverable economic damages and the recoverable noneconomic damages except as provided in subsection (g) of this section."

The state contends that, pursuant to *Bloom* v. *Gershon*, supra, 271 Conn. 96, it is precluded from filing a notice of apportionment against CVS Pharmacy. The state misconstrues our holding in *Bloom*. In *Bloom*, we held that the claims commissioner lacks jurisdiction "to waive the state's sovereign immunity and [to] grant a claimant permission to file an apportionment complaint . . . *against* the state of Connecticut in the Superior Court"; (emphasis added; footnote omitted) id., 99; because "the commissioner's jurisdiction to authorize suit against the state extends only to claims for monetary damages"; id., 111; and because "apportionment claims are claims for the apportionment of liability and are, therefore, separate and distinct from claims for monetary damages." Id., 110. *Bloom* thus holds that apportionment claims *against the state* are barred by the doctrine of sovereign immunity; it contains no suggestion that the state is barred from filing a notice of apportionment against a joint tortfeasor who was not made a party to the action and with whom the plaintiff previously had entered into a settlement and release agreement. Indeed, in *Babes* v. *Bennett*, 247 Conn. 256, 721 A.2d 511 (1998), we recognized that "the legislature intended that the state be permitted to apportion damages to other liable codefendants pursuant to § 52-572h (c) . . . ." Id., 268; see *Rodriguez* v. *State*, 155 Conn. App. 462, 468, 110 A.3d 467 (in negligence action against state, "the state filed a notice of apportionment against [the joint tortfeasors], alleging . . . that any damages should be apportioned between the state and those nonparties"), cert. granted, 316 Conn. 916, 113 A.3d 71 (2015) (appeal withdrawn, December 15, 2015). Our holding in *Bloom*, in short, would not bar the state from filing a notice of apportionment against CVS Pharmacy in the present case.

[10] General Statutes § 52-102b (c) provides in relevant part: "If a defendant claims that the negligence of any person, who was not made a party to the action, was a proximate cause of the plaintiff's injuries or damage and the plaintiff has previously settled or released the plaintiff's claims against such person, then a defendant may cause such person's liability to be apportioned by filing a notice specifically identifying such person by name and last-known address and the fact that the plaintiff's claims against such person have been settled or released. Such notice shall also set forth the factual basis of the defendant's claim that the negligence of such person was a proximate cause of the plaintiff's injuries or damage. . . ."

[11] Section 4-160 (f) provides that claims against the state authorized by the claims commissioner must be "tried to the court without a jury."

[12] General Statutes § 52-216a provides: "An agreement with any tortfeasor not to bring legal action or a release of a tortfeasor in any cause of action

shall not be read to a jury or in any other way introduced in evidence by either party at any time during the trial of the cause of action against any other joint tortfeasors, nor shall any other agreement not to sue or release of claim among any plaintiffs or defendants in the action be read or in any other way introduced to a jury. If the court at the conclusion of the trial concludes that the verdict is excessive as a matter of law, it shall order a remittitur and, upon failure of the party so ordered to remit the amount ordered by the court, it shall set aside the verdict and order a new trial. If the court concludes that the verdict is inadequate as a matter of law, it shall order an additur, and upon failure of the party so ordered to add the amount ordered by the court, it shall set aside the verdict and order a new trial. *This section shall not prohibit the introduction of such agreement or release in a trial to the court*." (Emphasis added.)

As this court observed in *Peck* v. *Jacquemin*, 196 Conn. 53, 491 A.2d 1043 (1985), "[i]t is readily apparent that, in cases tried to the court to which this statute applies, the legislature intended . . . to permit the introduction of any such agreement or release" with a joint tortfeasor to "[assist] the court . . . in arriving at an award of fair and just compensation where liability is found . . . ." Id., 73; see id. (because "it is assumed that the trial court will utilize only competent evidence in arriving at its decision and will disregard that which is incompetent . . . the matter of an agreement or release is handled under § 52-216a in a trial to the court with no substantive difference from the way it is handled in a trial to a jury" (citations omitted)).

———————————————————