GERALD BLOOM ET AL. *v.* JULIE GERSHON ET AL.
(SC 17030)
(SC 17031)
(SC 17032)

Sullivan, C. J., and Borden, Norcott, Katz and Zarella, Js.

Argued January 5—officially released September 14, 2004

*Robert D. Silva,* with whom, on the brief, was *Amy F. Goodusky,* for the appellant in Docket No. 17030 (defendant Kevin Shea).

*Thomas P. Clifford III,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellant in Docket No. 17031 (interested party claims commissioner).

*Jane D. Comerford,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellant in Docket No. 17032 (defendant state of Connecticut).

*Laura Pascale Zaino,* with whom, on the brief, were *John B. Farley, Richard C. Tynan* and *James V. Somers,* for the appellees (named defendant et al.).

*Frank H. Santoro,* with whom, on the brief, were *Joyce A. Lagnese* and *Karey P. Pond,* for the appellee (defendant Henry Maresh).

*Opinion*

BORDEN, J. The principal issue in this appeal is whether the claims commissioner has jurisdiction, pur-

suant to General Statutes § 4-160,[1] to waive the state's sovereign immunity and grant a claimant permission to file an apportionment complaint, pursuant to General Statutes § 52-102b,[2] against the state of Connecticut in the Superior Court. We conclude that the claims com-

[1] General Statutes § 4-160 provides in relevant part: "(a) When the Claims Commissioner deems it just and equitable, he may authorize suit against the state on any claim which, in his opinion, presents an issue of law or fact under which the state, were it a private person, could be liable.

"(b) In any claim alleging malpractice against the state, a state hospital or a sanitorium or against a physician, surgeon, dentist, podiatrist, chiropractor or other licensed health care provider employed by the state, the attorney or party filing the claim may submit a certificate of good faith to the Claims Commissioner in accordance with section 52-190a. If such a certificate is submitted, the Claims Commissioner shall authorize suit against the state on such claim.

"(c) In each action authorized by the Claims Commissioner pursuant to subsection (a) or (b) of this section or by the General Assembly pursuant to section 4-159 or 4-159a, the claimant shall allege such authorization and the date on which it was granted, except that evidence of such authorization shall not be admissible in such action as evidence of the state's liability. The state waives its immunity from liability and from suit in each such action and waives all defenses which might arise from the eleemosynary or governmental nature of the activity complained of. The rights and liability of the state in each such action shall be coextensive with and shall equal the rights and liability of private persons in like circumstances. . . ."

[2] General Statutes § 52-102b provides in relevant part: "(a) A defendant in any civil action to which section 52-572h applies may serve a writ, summons and complaint upon a person not a party to the action who is or may be liable pursuant to said section for a proportionate share of the plaintiff's damages in which case the demand for relief shall seek an apportionment of liability. Any such writ, summons and complaint, hereinafter called the apportionment complaint, shall be served within one hundred twenty days of the return date specified in the plaintiff's original complaint. The defendant filing an apportionment complaint shall serve a copy of such apportionment complaint on all parties to the original action in accordance with the rules of practice of the Superior Court on or before the return date specified in the apportionment complaint. The person upon whom the apportionment complaint is served, hereinafter called the apportionment defendant, shall be a party for all purposes, including all purposes under section 52-572h.

"(b) The apportionment complaint shall be equivalent in all respects to an original writ, summons and complaint, except that it shall include the docket number assigned to the original action and no new entry fee shall be imposed. The apportionment defendant shall have available to him all remedies available to an original defendant including the right to assert

missioner does not have such jurisdiction. Accordingly, we reverse the judgment of the trial court to the contrary.

The plaintiffs, Gerald Bloom and Sandra Bloom, brought this medical malpractice action against the defendant radiologists, Julie Gershon, Alisa Siegfeld and Mandell and Blau, P.C. (radiologists). The radiologists subsequently filed apportionment complaints against Henry Maresh and Kevin Shea, both of whom also had provided medical treatment to Gerald Bloom. The plaintiffs[3] then filed direct complaints against both Maresh and Shea, and Maresh, in turn, filed an appor-

defenses, set-offs or counterclaims against any party. If the apportionment complaint is served within the time period specified in subsection (a) of this section, no statute of limitation or repose shall be a defense or bar to such claim for apportionment, except that, if the action against the defendant who instituted the apportionment complaint pursuant to subsection (a) of this section is subject to such a defense or bar, the apportionment defendant may plead such a defense or bar to any claim brought by the plaintiff directly against the apportionment defendant pursuant to subsection (d) of this section.

"(c) No person who is immune from liability shall be made an apportionment defendant nor shall such person's liability be considered for apportionment purposes pursuant to section 52-572h. If a defendant claims that the negligence of any person, who was not made a party to the action, was a proximate cause of the plaintiff's injuries or damage and the plaintiff has previously settled or released the plaintiff's claims against such person, then a defendant may cause such person's liability to be apportioned by filing a notice specifically identifying such person by name and last known address and the fact that the plaintiff's claims against such person have been settled or released. Such notice shall also set forth the factual basis of the defendant's claim that the negligence of such person was a proximate cause of the plaintiff's injuries or damages. No such notice shall be required if such person with whom the plaintiff settled or whom the plaintiff released was previously a party to the action. . . ."

[3] The plaintiffs did not participate in the present appeal. Furthermore, there is no indication in the record that they ever sought to have the claims commissioner waive the state's sovereign immunity with regard to their claims against Shea, who was a state employee at the time he treated Gerald Bloom. Apparently, they regard the viability of their claims against Shea as rising or falling with the viability of the apportionment complaints against Shea.

tionment complaint against Shea. Shea responded by filing an affidavit with the trial court stating that, at the time he provided medical treatment to Gerald Bloom, he was an employee of the state. Shea also filed motions to dismiss the apportionment complaints of the apportionment plaintiffs, Maresh and the radiologists, as well as the plaintiffs' direct complaint, on the ground that sovereign immunity barred suit against him. Upon learning that Shea was an employee of the state, Maresh and the radiologists filed notices of claim with the claims commissioner (commissioner) seeking a waiver of sovereign immunity and permission to file their apportionment complaints in the Superior Court. Additionally, Maresh filed a motion requesting a declaratory ruling from the trial court that § 4-160 (b) operates as an automatic waiver of the state's sovereign immunity, and a writ of mandamus ordering the commissioner to authorize Maresh's apportionment complaint. The commissioner filed a motion opposing Maresh's motion for a declaratory ruling and a writ of mandamus. Maresh also filed an apportionment complaint against the state in the trial court, and the state moved to dismiss the complaint on the ground of sovereign immunity. Shea also moved to dismiss all the complaints against him.

The trial court subsequently granted Maresh's motion for a declaratory ruling and his request for a writ of mandamus, and denied the motions to dismiss filed by the apportionment defendants, the state and Shea. This appeal followed.[4]

The state and Shea, acting in his official capacity as an employee of the state, along with the commissioner appearing as an interested party, appeal from the judgment of the trial court: (1) granting Maresh's (a) motion

[4] The state and Shea, as well as the commissioner, appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

for a declaratory ruling that § 4-160 (b) operates as an automatic waiver of the state's sovereign immunity, and (b) request for a writ of mandamus ordering the commissioner to authorize Maresh's apportionment claim against the state; and (2) denying the state's and Shea's motions to dismiss Maresh's and the radiologists' apportionment complaints on the basis of sovereign immunity. The state and Shea, as well as the commissioner, claim that this court's recent decision in *Lostritto* v. *Community Action Agency of New Haven, Inc.*, 269 Conn. 10, 36–38, 848 A.2d 418 (2004), is dispositive of the question of whether the trial court improperly granted Maresh's motion for a declaratory ruling and a writ of mandamus, and improperly denied the state's and Shea's motions to dismiss.

The facts and procedural history are not in dispute and may be summarized as follows. The claim underlying this case arose out of medical treatment rendered to Gerald Bloom by the radiologists. He developed lung cancer and alleged negligence by the radiologists in failing to diagnose properly his condition. Sandra Bloom also filed a loss of consortium complaint against the radiologists. The radiologists subsequently filed an apportionment complaint in the trial court against Shea and Maresh, pursuant to § 52-102b, alleging negligence against them in separate counts. The plaintiffs then filed direct claims, accompanied by certificates of good faith pursuant to General Statutes § 52-190a (a),[5] with the

[5] General Statutes § 52-190a (a) provides: "No civil action shall be filed to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint or initial pleading shall contain a certificate, on a form prescribed by the rules of the superior court, of the attorney or party filing the action that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant. For purposes of this section, such good faith may be

trial court against Shea and Maresh, by way of an amended complaint.

Shea subsequently moved to dismiss both the radiologists' apportionment complaint and the plaintiffs' direct complaint against him, claiming that he was employed by the state when he treated Gerald Bloom and, therefore, he was immune, pursuant to General Statutes § 4-165,[6] from direct and apportionment claims unless the complaints against him alleged wanton, reckless or malicious conduct, which they did not. Shea further claimed that he was immune from suit in his capacity as an agent of the state because, pursuant to § 4-160, the commissioner must authorize all actions for monetary damages brought against the state, and the commissioner had not authorized any of the parties' claims against Shea in his official capacity as an employee of the state. Upon receipt of Shea's motion to dismiss, Maresh and the radiologists filed notices of claim against Shea in his official capacity with the commis-

shown to exist if the claimant or his attorney has received a written opinion, which shall not be subject to discovery by any party except for questioning the validity of the certificate, of a similar health care provider as defined in section 52-184c, which similar health care provider shall be selected pursuant to the provisions of said section, that there appears to be evidence of medical negligence. In addition to such written opinion, the court may consider other factors with regard to the existence of good faith. If the court determines after the completion of discovery, that such certificate was not made in good faith and that no justiciable issue was presented against a health care provider that fully cooperated in providing informal discovery, the court upon motion or upon its own initiative, shall impose upon the person who signed such certificate, a represented party or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee. The court may also submit the matter to the appropriate authority for disciplinary review of the attorney if the claimant's attorney submitted the certificate."

[6] General Statutes § 4-165 provides in relevant part: "No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment. . . ."

sioner. Their notices of claim were accompanied by certificates of good faith, as provided for by § 4-160 (b). In addition, Maresh moved the trial court for a declaratory ruling that § 4-160 (b); see footnote 1 of this opinion; operates as an automatic waiver of the state's sovereign immunity, and an order, in the form of a writ of mandamus, requiring the commissioner to authorize his apportionment claim against Shea in his official capacity. Shea subsequently filed an objection to Maresh's motion for a writ of mandamus, stating that neither the state nor the commissioner was a party to the action, and reiterating his claim that all complaints against him in his personal capacity—be they direct or apportionment claims—must be dismissed for lack of jurisdiction in the absence of an allegation of wanton, reckless or malicious conduct.

Thereafter, the commissioner filed an appearance as an interested party pursuant to Practice Book § 17-56 (b),[7] and subsequently filed an objection to Maresh's motion seeking a declaratory ruling that § 4-160 (b) acts as a waiver of the state's sovereign immunity and seeking a writ of mandamus ordering the commissioner to authorize suit. Thereafter, Maresh filed an apportionment complaint in the trial court against the state, and the state, in response, moved to dismiss that complaint, claiming that the trial court lacked jurisdiction over the apportionment complaint in the absence of authorization by the commissioner.

The court granted Maresh's motion for a writ of mandamus ordering the commissioner to authorize all apportionment claims against the state and Shea in his official capacity that were filed with the commissioner

[7] Practice Book § 17-56 (b) provides in relevant part: "All persons who have an interest in the subject matter of the requested declaratory judgment that is direct, immediate and adverse to the interest of one or more of the plaintiffs or defendants in the action shall be made parties to the action or shall be given reasonable notice thereof. . . ."

as notices of claim accompanied by certificates of good faith. In the same judgment, the court denied Shea's motion to dismiss the complaints against him, and denied the state's motion to dismiss Maresh's apportionment complaint.

On May 18, 2004, after briefing and oral argument before this court in the present appeal, this court issued its decision in *Lostritto* v. *Community Action Agency of New Haven, Inc.*, supra, 269 Conn. 36–38, in which we held that apportionment claims are not claims for monetary damages, and that, therefore, § 52-190a, which requires the filing of a certificate of good faith for medical malpractice claims for monetary damages, does not apply to apportionment complaints. In light of that decision, we requested the parties in the present case to file supplemental briefs answering the following question: "What effect, if any, does the recent decision in *Lostritto* v. *Community Action Agency of New Haven*, [supra, 10] . . . have on the law to be applied in *Bloom* v. *Gershon* . . . ?"

The state and Shea, as well as the commissioner, in their supplemental briefs, claim, among other things, that § 4-160 (a) permits the commissioner to authorize suit against the state only on claims for which the state may be liable, and that General Statutes § 4-141[8] defines a claim as "a petition for the payment or refund of money by the state or for permission to sue the state . . . ." The state and Shea, and also the commissioner, further argue that, because § 4-160 (a) extends jurisdiction to the commissioner only to authorize claims for the payment or refund of money or to grant permission to a claimant to sue the state in Superior Court for the

[8] General Statutes § 4-141 provides in relevant part: "As used in this chapter: 'Claim' means a petition for the payment or refund of money by the state or for permission to sue the state; 'just claim' means a claim which in equity and justice the state should pay, provided the state has caused damage or injury or has received a benefit . . . ."

payment or refund of money, and because *Lostritto* held that claims for the apportionment of liability are not claims for monetary damages, the commissioner lacks jurisdiction to review the claims, and, consequently, may not waive the state's sovereign immunity and authorize suit against the state in the Superior Court. The state and Shea, and the commissioner, claim, therefore, that *Lostritto* dictates that the trial court's judgment granting of Maresh's request of a writ of mandamus and denying the motions to dismiss filed by the state and Shea, was improper. We agree.

Because our conclusion regarding the propriety of the trial court's issuance of a writ of mandamus necessarily guides our determination regarding the propriety of the trial court's denial of the state's and Shea's motions to dismiss, we begin our analysis by addressing the question of whether the trial court's granting of Maresh's request for a writ of mandamus ordering the commissioner to authorize all apportionment claims against the state and Shea was improper. It is well settled that "[m]andamus is an extraordinary remedy, available in limited circumstances for limited purposes. . . . It is fundamental that the issuance of the writ rests in the discretion of the court, not an arbitrary discretion exercised as a result of caprice but a sound discretion exercised in accordance with recognized principles of law. . . . That discretion will be exercised in favor of issuing the writ only where the plaintiff has a clear legal right to have done that which he seeks. . . . The writ is proper only when (1) the law imposes on the party against whom the writ would run a duty the performance of which is mandatory and not discretionary; (2) the party applying for the writ has a clear legal right to have the duty performed; and (3) there is no other specific adequate remedy." (Internal quotation marks omitted.) *Miles* v. *Foley*, 253 Conn. 381, 391, 752 A.2d 503 (2000).

We now turn to the issue of whether, in light of *Lostritto*, the trial court improperly ordered, by way of a writ of mandamus, the commissioner to waive the state's immunity and authorize the apportionment claims of Maresh and the radiologists. "We have long recognized the common-law principle that the state cannot be sued without its consent. . . . We have also recognized that because the state can act only through its officers and agents, a suit against a state officer [or agent] concerning a matter in which the officer [or agent] represents the state is, in effect, against the state. . . . Therefore, we have dealt with such suits as if they were solely against the state and have referred to the state as the defendant. . . .

"The absolute bar of actions against the state on the ground of sovereign immunity has been modified by statute and by judicial decisions. Sovereign immunity does not bar suits against state officials [or agents] acting in excess of their statutory authority or pursuant to an unconstitutional statute. . . . In addition, the state cannot use sovereign immunity as a defense in an action for declaratory or injunctive relief. . . . However, [i]n the absence of legislative authority . . . we have declined to permit any monetary award against the state or its officials [or agents]. . . .

"When sovereign immunity has not been waived, the claims commissioner is authorized by statute to hear monetary claims against the state and determine whether the claimant has a cognizable claim. See General Statutes §§ 4-141 through 4-165b. The claims commissioner, if he deems it just and equitable, may sanction suit against the state on any claim which, in his opinion, presents an issue of law or fact under which the state, were it a private person, could be liable. General Statutes § 4-160 (a). This legislation expressly bars suits upon claims cognizable by the claims commissioner except as he may authorize, an indication of the

legislative determination to preserve sovereign immunity as a defense to monetary claims against the state not sanctioned by the commissioner or other statutory provisions." (Citations omitted; internal quotation marks omitted.) *Krozser* v. *New Haven*, 212 Conn. 415, 420–21, 562 A.2d 1080 (1989), cert. denied, 443 U.S. 1036, 110 S. Ct. 757, 107 L. Ed. 2d 774 (1990).

In *Miller* v. *Egan*, 265 Conn. 301, 318, 828 A.2d 549 (2003), we explained the legislative history and purpose of chapter 53; General Statutes §§ 4-141 through 4-165b; which is entitled "Claims Against the State." "The office of the claims commissioner was created by Public Acts 1959, No. 685. Prior to 1959, a claimant who sought to sue the state for monetary damages, in the absence of a statutory waiver by the state, had but one remedy— namely, to seek relief from the legislature, either in the form of a monetary award or permission to sue the state. See Conn. Joint Standing Committee Hearings, Appropriations, Pt. 3, 1959 Sess., pp. 919–20. In discussing the need for the claims commission, George Oberst, the director of the legislative council, explained that the commission was intended to ease the legislature's burden in handling claims for monetary relief. Id., p. 920 . . . ." (Citation omitted.) *Miller* v. *Egan*, supra, 318.

Also, in *Miller* v. *Egan*, supra, 265 Conn. 318–20, we set forth the process by which a claimant may file a claim for monetary damages against the state through the commissioner. "The procedure for claims that must proceed through the claims commissioner is well delineated. The commissioner has jurisdiction, pursuant to General Statutes § 4-158 (a), to approve immediate payment of just claims not exceeding seven thousand five hundred dollars. Any person who has brought a claim for more than $7500 may waive immediate payment and the claims commissioner, pursuant to General Statutes § 4-159, shall submit the claim to the General

Assembly with recommendations . . . for the payment or rejection of amounts exceeding seven thousand five hundred dollars. In addition to granting direct monetary relief, the claims commissioner may authorize suit against the state on any claim which, in his opinion, presents an issue of law or fact under which the state, were it a private person, could be liable. General Statutes § 4-160 (a)." (Internal quotation marks omitted.) *Miller* v. *Egan*, supra, 319–20. This language permits the claimant, upon obtaining the commissioner's authorization pursuant to § 4-160 (a), to file his claim directly in the Superior Court.

Section 4-160 (b), moreover, explicitly permits claims alleging medical malpractice against the state or against a physician employed by the state to be filed with the commissioner, who, in turn, may waive the state's sovereign immunity and permit the claimant to file his claim in the Superior Court. Section 4-160 (b) also provides that such claims filed with the commissioner may be accompanied by a certificate of good faith in accordance with § 52-190a, which sets forth the process by which a plaintiff may sue a private individual for medical malpractice. When a claim is accompanied by a certificate of good faith, § 4-160 (b) provides that the commissioner "shall authorize suit against the state on such claim."

In the present case, it is undisputed that Maresh and the radiologists sought to apportion liability to the state potentially in excess of $7500. It is also undisputed that they filed apportionment claims, accompanied by certificates of good faith, as provided for by § 4-160 (b), with the commissioner. What is disputed, however, are: (1) whether § 4-160 (b) pertains to claims for the apportionment of liability; (2) whether claims for the apportionment of liability, as opposed to direct claims for monetary damages, may be filed with the commissioner; and (3) whether, upon receipt of a certificate of good

faith in conjunction with an apportionment claim, the commissioner may be compelled to waive the state's sovereign immunity and authorize the claim. The reasoning in *Lostritto* v. *Community Action Agency of New Haven, Inc.*, supra, 269 Conn. 10, is dispositive of these issues, and requires that they each be answered in the negative.

In *Lostritto*, this court was presented with the question of whether an apportionment complaint, filed pursuant to § 52-102b against a private party, must be accompanied by a certificate of good faith, as is required of plaintiffs seeking to file a direct malpractice claim for monetary damages pursuant to § 52-190a. Id., 36. We held that it did not. Id., 36–38. In so doing, we concluded that § 52-102b, which permits a defendant to file a claim against a nonparty defendant for the apportionment of any liability resulting from the plaintiff's direct claim, does not implicate monetary damages, but rather merely the apportionment of liability. Id., 36. In other words, apportionment claims are claims for the apportionment of liability and are, therefore, separate and distinct from claims for monetary damages. Id. Because § 52-190a pertains only to plaintiffs seeking monetary damages, it does not apply to apportionment plaintiffs, who seek only the apportionment of liability. Id., 36–37.[9]

---

[9] As we stated in *Lostritto* v. *Community Action Agency of New Haven, Inc.*, supra, 269 Conn. 36, § 52-190a "does not apply to apportionment claims under § 52-102b by virtue of the express wording of the statute. Section 52-190a (a) provides in relevant part that [n]o civil action shall be filed *to recover damages* resulting from personal injury or wrongful death occurring on or after October 1, 1987, whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. . . . By its own terms, § 52-190a (a) applies only to those actions in which a party seeks to recover damages . . . . Pursuant to § 52-102b (a), the demand for relief in an apportionment complaint seeks only an apportionment of liability. Liability refers to a legal

The significance, for the present case, of *Lostritto*'s holding that apportionment claims are not claims for monetary damages is that, because the commissioner's jurisdiction to authorize suit against the state extends only to claims for monetary damages, the commissioner lacks the statutory jurisdiction under the provisions of chapter 53 to review or authorize apportionment claims. As we have already stated, chapter 53 delegated to the commissioner the duty formerly held by the legislature to review all claims against the state for monetary damages and either recommend or reject requests for payment of claims not exceeding $7500, or waive the state's sovereign immunity and permit the claimant to file a complaint for monetary damages in excess of $7500 in the Superior Court. Because the commissioner has jurisdiction only over claims for monetary damages, and because we held in *Lostritto* that apportionment claims are not claims for money damages, we conclude that the commissioner lacked jurisdiction over the apportionment claims of Maresh and the radiologists. We further conclude, therefore, that the trial court's decision ordering the commissioner, by way of a writ of mandamus, to waive the state's sovereign immunity and permit the apportionment claims to be filed with the trial court was improper. See *Miles* v. *Foley*, supra, 253 Conn. 391.

Maresh and the radiologists claim that our holding in *Lostritto*, which dealt exclusively with apportionment claims against private parties, should not dictate the outcome in the present case, because the apportionment claims in the present case are against the state, and not a private party. Specifically, they point out that

obligation or responsibility; Black's Law Dictionary (6th Ed. 1990); whereas damages refers to monetary compensation for loss or injury. Id. The terms are not synonymous. Accordingly, § 52-190a, which applies only to civil actions to recover damages, does not apply to apportionment complaints which seek only an apportionment of liability." (Emphasis in original; internal quotation marks omitted.)

§ 4-160 (a) permits the commissioner to "authorize suit against the state on any claim which, in his opinion, presents an issue of law or fact under which the state, were it a private person, could be liable." This language, they argue, does not limit the definition of "claim" in § 4-160 (a) to claims for monetary damages; rather, the statute specifically refers to "*any* claim," and, therefore, can encompass claims for the apportionment of liability as well as claims for monetary damages. (Emphasis added.) Maresh and the radiologists further assert that the language of § 4-141, which defines the word "claim" for the purposes of chapter 53, supports their argument that § 4-160 (a) pertains to both claims for the apportionment of liability and for monetary damages. Section 4-141 provides that a claim "means a petition for the payment or refund of money by the state or for *permission to sue the state* . . . ." (Emphasis added.) Maresh and the radiologists argue that the language, "permission to sue the state," is not expressly limited to suits for monetary damages and, therefore, can be read to encompass suits for the apportionment of liability.

This argument, however, fails to take into account that chapter 53 pertains exclusively to claims for monetary damages against the state, and, therefore, any reference to the word "claim" in chapter 53 must be read to refer to claims for monetary damages. Thus, the language in § 4-141, "permission to sue the state," refers to the commissioner's alternate power involving claims of more than $7500. The provision of § 4-160 (a), therefore, which permits the commissioner to "authorize suit against the state on any claim which, in his opinion, presents an issue of law or fact under which the state, were it a private person, could be liable," pertains to claims for money damages. Similarly, § 4-141, which defines the word "claim" as a petition "for permission to sue the state," as well as a petition for the payment or refund of money by the state, by virtue of pertaining

to the provisions of chapter 53, necessarily means a petition for permission to sue the state *for the payment or refund of money.*

On the basis of this conclusion, we further conclude that the trial court should have granted the motions to dismiss filed by the state and Shea. "[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. . . . A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Citation omitted; internal quotation marks omitted.) *Miller* v. *Egan,* supra, 265 Conn. 313.

There were several motions to dismiss before the trial court in the present case. Shea sought a dismissal of the plaintiffs' and the radiologists' complaints against him on the ground that, as an individual employed by the state, he is immune from suit in both his personal capacity, in the absence of allegations that his conduct was wanton, reckless, or malicious,[10] and his official capacity as an agent of the state. The state also filed a motion to dismiss Maresh's apportionment complaint on the ground of sovereign immunity. The trial court predicated its denial of both the state's and Shea's motions to dismiss on its decision declaring that § 4-160 (b) acts as a waiver of the state's sovereign immunity and issuing a writ of mandamus ordering the commissioner to authorize the apportionment complaints of Maresh and the radiologists. The state and Shea argue that, in light of *Lostritto,* the trial court's denial of their motions to dismiss was improper.[11]

---

[10] See footnote 6 of this opinion for the text of § 4-165.

[11] We note that none of the complaints against Shea alleged wanton, reckless or malicious conduct, and that the radiologists represented to the trial court, as well as to this court, that their apportionment complaint was

As we have determined, the commissioner lacked jurisdiction under chapter 53 to authorize apportionment complaints. Therefore, the state's immunity was not waived in regard to the apportionment complaints of Maresh and the radiologists. The state's sovereign immunity, therefore, is still intact, and because § 52-102b (c) explicitly provides that "[n]o person who is immune from liability shall be made an apportionment defendant," the trial court's denial of the state's and Shea's motions to dismiss the complaints against them was improper.

Maresh and the radiologists contend, nonetheless, that a conclusion that the commissioner lacks jurisdiction to authorize apportionment claims would effectively render the state absolutely immune from apportionment claims, and, furthermore, that such an outcome would frustrate the stated legislative purposes behind both Tort Reform Act I and Tort Reform Act II, which seek to promote the equitable apportionment of liability between multiple tortfeasors. The simple answer is that, by virtue of both the general statutory scheme governing the commissioner's jurisdiction, and the provision in § 52-102b (c) that apportionment claims may not be filed against any party who is immune from liability, the legislature already has made that set of policy determinations.

The judgment is reversed and the case is remanded to the trial court with direction to deny Maresh's motions for a declaratory ruling and for a writ of manda-

filed against Shea in his official capacity as an employee of the state, and not in his individual capacity. Moreover, our reading of the trial court's decision suggests that, despite its passing reference to Shea in his personal capacity, the court interpreted all of the complaints filed against Shea to be, in fact, claims against the state. Therefore, the complaints were subject to the defense of sovereign immunity, which both Shea and the state pleaded in their motions to dismiss. The trial court's denial of the state's and Shea's motions to dismiss, therefore, was a final judgment for purposes of appeal. See *Shay* v. *Rossi*, 253 Conn. 134, 164–65, 749 A.2d 1147 (2000).

mus, and to grant the state's and Shea's motions to dismiss the apportionment complaints.

In this opinion the other justices concurred.