## LOUISETTE G. LAGASSEY, EXECUTRIX (ESTATE OF WILFRED J. LAGASSEY) *v.* STATE OF CONNECTICUT*

Superior Court, Judicial District of Hartford
File No. CV-01-0807201S

Memorandum filed October 19, 2005

*Trantolo & Trantolo*, for the plaintiff.

*O'Brien, Tanski & Young*, for the defendant.

STENGEL, J. This is a wrongful death and loss of consortium action brought by the plaintiff, Louisette G. Lagassey, individually and in her capacity as the executrix of the estate of Wilfred J. Lagassey (decedent), against the defendant, the state of Connecticut.

* Affirmed. *Lagassey* v. *State*, 281 Conn. 1, 914 A.2d 509 (2007).

On April 20, 2001, the plaintiff filed a two count complaint against the defendant for the death of her decedent husband, who had died as a result of a ruptured infra-renal abdominal aortic aneurysm while he was a patient at the University of Connecticut Health Center and John Dempsey Hospital (hospital) operated by the defendant.

In count one, the plaintiff alleges the following facts. Sometime in 1989, the decedent was diagnosed with an infra-renal abdominal aortic aneurysm that measured 4.1 centimeters. In August, 1992, while the decedent was at a routine visit to monitor the aneurysm, it was discovered that the aneurysm had grown to approximately 5.1 centimeters, and surgery was scheduled for November, 1992. On October 6, 1992, an aorta gram was performed to determine if he would undergo surgery. On the evening of October 7, 1992, the decedent began to experience lower back pain, gastrointestinal distress and abdominal pain. On October 8, 1992, he was admitted to the hospital for treatment. Various tests were performed that indicated that the aneurysm had grown to 5.7 centimeters, his white blood cell count was elevated and there was a possibility of a leak. Steven Ruby, a vascular surgeon employed at the hospital, examined the decedent and was informed of the last recorded measurement of the aneurysm but declined to examine the records of the decedent from Yale-New Haven Hospital. The decedent was then given Percocet to alleviate his back and abdominal pain. The following day, his abdomen was visibly protruding and he was given a suppository by a staff nurse. Soon after the suppository was administered, the decedent had a seizure and went into cardiac arrest. He was immediately removed to an operating room where he died of a ruptured infra-renal abdominal aortic aneurysm.

The plaintiff alleges the following additional facts in count one. The defendant and its agents, servants or employees "deviated from the applicable standards of

medical care in their treatment of the plaintiff's decedent" in the following ways: (1) failing to diagnose or to treat properly the leaking aneurysm, the back and abdominal pain, and the elevated white blood cell count; (2) improperly prescribing Percocet; and (3) failing to operate, which resulted in the decedent's remaining "undiagnosed and untreated for an extended period of time." As a result of the defendant's alleged actions, the ability of the decedent to pursue and enjoy life's activities was destroyed, and the plaintiff was forced to incur financial obligations. On August 23, 2000, the plaintiff was granted permission to sue the defendant by the claims commissioner. In count two, the plaintiff further alleges that as a direct and proximate cause of the defendant's negligence, the plaintiff has and will continue to suffer a loss of consortium.

On July 27, 2004, the defendant filed a motion for summary judgment. The motion was accompanied by a memorandum of law. The plaintiff filed a memorandum of law in opposition to the defendant's motion for summary judgment on August 27, 2004. On September 20, 2004, the defendant filed a reply memorandum.

A "motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried." *Wilson* v. *New Haven*, 213 Conn. 277, 279, 567 A.2d 829 (1989). "Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a

matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) *Lombardo's Ravioli Kitchen, Inc.* v. *Ryan*, 268 Conn. 222, 237, 842 A.2d 1089 (2004). "Summary judgment may be granted where the claim is barred by the statute of limitations." *Doty* v. *Mucci*, 238 Conn. 800, 806, 679 A.2d 945 (1996). Summary judgment is appropriate on statute of limitation grounds when the "material facts concerning the statute of limitations [are] not in dispute . . . ." *Burns* v. *Hartford Hospital*, 192 Conn. 451, 452, 472 A.2d 1257 (1984).

The defendant moves for summary judgment on the ground that the two year statute of limitations contained in General Statutes § 52-555 (a)[1] expired prior to the plaintiff's commencing the present cause of action. Specifically, the defendant argues that while the tolling provision in General Statutes § 4-160 (d)[2] temporarily suspends the statute of limitations from running, it does not begin the limitation period anew. In response, the

[1] General Statutes § 52-555 (a) provides: "In any action surviving to or brought by an executor or administrator for injuries resulting in death, whether instantaneous or otherwise, such executor or administrator may recover from the party legally at fault for such injuries just damages together with the cost of reasonably necessary medical, hospital and nursing services, and including funeral expenses, provided no action shall be brought to recover such damages and disbursements but within two years from the date of death, and except that no such action may be brought more than five years from the date of the act or omission complained of."

[2] General Statutes § 4-160 (d) provides: "No such action shall be brought but within one year from the date such authorization to sue is granted. With respect to any claim pending before the Claims Commissioner on October 1, 1992, or presented to the Claims Commissioner on or after said date for which authorization is granted, any statute of limitation applicable to such action shall be tolled until the date such authorization to sue is granted. Action shall be brought against the state as party defendant in the judicial district in which the claimant resides or, if the claimant is not a resident of this state, in the judicial district of Hartford or in the judicial district in which the claim arose."

plaintiff argues that the tolling provision contained in § 4-160 (d) suspends the onset of any applicable statute of limitations.

## I

### GENERAL STATUTES § 52-555 (a)

"The wrongful death statute; General Statutes § 52-555; is the sole basis upon which an action that includes as an element of damages a person's death or its consequences can be brought. At common law, the death of the injured person, whether contemporaneous with the wrongful act or not, terminated liability of the wrongdoer because the right to enforce it ended with the death. . . . Death and its direct consequences can constitute recoverable elements of damages only if, and to the extent that, they are made so by statute. . . . Because it is in derogation of the common law, an action for wrongful death is limited to matters clearly within its scope." (Citations omitted.) *Lynn* v. *Haybuster Mfg., Inc.*, 226 Conn. 282, 295, 627 A.2d 1288 (1993). Moreover, our Supreme Court has held that the two year statute of limitations contained in § 52-555 (a) is a jurisdictional prerequisite to sustaining a cause of action. *Ecker* v. *West Hartford*, 205 Conn. 219, 233, 530 A.2d 1056 (1987). "[T]he . . . limitation [period] contained within § 52-555 is a jurisdictional prerequisite which cannot be waived and which must be met in order to maintain an action under § 52-555. Since § 52-555 creates liability where none formerly existed, the statute must be strictly construed and we are not at liberty to extend, modify or enlarge its scope through the mechanics of construction." Id.

In the present case, the plaintiff had two years from the date of the decedent's death, October 8, 1992, in which to bring a cause of action pursuant to § 52-555.[3] In

---

[3] The court notes that the claim presented to the claims commissioner is not considered the initiation of a cause of action. "That claim is not a demand, a suit or an action in a court of justice but, rather, is a petition

the absence of a relevant tolling provision, the plaintiff would be barred from bringing this cause of action. Both parties are in agreement that the tolling provision contained in § 4-160 is applicable to the facts of this case. The plaintiff contends, however, that the tolling provision does not suspend the applicable statute of limitations period but rather delays the onset of the limitation period.

## II

### GENERAL STATUTES § 4-160

Our Supreme Court has "long recognized the common-law principle that the state cannot be sued without its consent." (Internal quotation marks omitted.) *Bloom* v. *Gershon*, 271 Conn. 96, 107, 856 A.2d 335 (2004). "[A] plaintiff seeking to circumvent the doctrine of sovereign immunity must show that: (1) the legislature, either expressly or by force of a necessary implication, statutorily waived the state's sovereign immunity . . . or (2) in an action for declaratory or injunctive relief, the state officer or officers against whom such relief is sought acted in excess of statutory authority, or pursuant to an unconstitutional statute." (Citation omitted.) *Miller* v. *Egan*, 265 Conn. 301, 314, 828 A.2d 549 (2003). "[I]n the absence of legislative authority . . . we have declined to permit any monetary award against the state or its officials [or agents]." (Internal quotation marks omitted.) *Bloom* v. *Gershon*, supra, 107. "When sovereign immunity has not been waived, the . . . [claims] commissioner is authorized by statute to hear monetary claims against the state and determine whether the claimant has a cognizable claim. See General Statutes §§ 4-141 through 4-165b. The . . . [claims] commissioner, if he deems it just and equitable, may sanction suit against the state on any claim which, in his opinion,

seeking permission to proceed with an action against the state in a court of justice." *Capers* v. *Lee*, 239 Conn. 265, 272, 684 A.2d 696 (1996).

presents an issue of law or fact under which the state, were it a private person, could be liable. General Statutes § 4-160 (a)." (Internal quotation marks omitted.) *Lagassey* v. *State*, 268 Conn. 723, 732, 846 A.2d 831 (2004). Our Supreme Court has stated that § 4-160 does not alter the substantive rights of parties. "The sole purpose of § 4-160 . . . is to remove the bar of sovereign immunity when the claims commissioner determines that it would be 'just and equitable' to permit a claimant to seek redress against the state. . . . [T]here is no indication that the legislature, in empowering the claims commissioner to waive the state's immunity from suit, intended to enhance or otherwise to modify a plaintiff's substantive rights." (Citation omitted.) *Chotkowski* v. *State*, 240 Conn. 246, 270, 690 A.2d 368 (1997). As stated previously in this opinion, the plaintiff's sole cause of action for wrongful death is pursuant to § 52-555, which contains a two year statute of limitations. It is undisputed that the tolling provision contained in § 4-160 (d)[4] is applicable to the present case. The parties disagree, however, over the application of the tolling provision, which is the crux of the present case.

The tolling provision contained in § 4-160 (d) provides in relevant part that "any statute of limitation applicable to such action shall be tolled until the date such authorization to sue is granted. . . ." General Statutes § 4-160 (d). The word "toll" is not defined in the statute and, therefore, the court must rely on its "appropriate meaning in the law . . . ." General Statutes § 1-1 (a).[5] As emphasized by our Supreme Court, "legal terms . . . absent any legislative intent shown to the

---

[4] See footnote 2 of this opinion.

[5] General Statutes § 1-1 (a) provides: "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly."

contrary, are to be presumed to be used in their legal sense. . . . Words with a fixed legal or judicially settled meaning must be presumed to have been used in that sense. . . . In ascertaining legislative intent [r]ather than using terms in their everyday sense, [t]he law uses familiar legal expressions in their familiar legal sense." (Internal quotation marks omitted.) *Perkins* v. *Freedom of Information Commission*, 228 Conn. 158, 169–70, 635 A.2d 783 (1993). "Toll" is defined by Black's Law Dictionary as "[t]o suspend or stop temporarily as the statute of limitations is tolled during the defendant's absence from the jurisdiction and during the plaintiff's minority." Black's Law Dictionary (6th Ed. 1990). The word "until" is defined by Merriam-Webster's Collegiate Dictionary (10th Ed. 1993) as "a function word to indicate continuance (as of an action or condition) to a specified time . . . ." Historically, "[t]he word until is a word of limitation used ordinarily to restrict what immediately precedes it to what immediately follows it. Its office is to point out some point of time or the happening of some event when what precedes it shall cease to exist or have any further force or effect." (Internal quotation marks omitted.) *Whitford* v. *Lee*, 97 Conn. 554, 561, 117 A. 554 (1922). As most recently defined by our Appellate Court, "[t]he tolling of a statute of limitations may potentially overcome a statute of limitations defense. When a statute of limitations is tolled, it does not run and the time during which the statute is tolled is considered, in effect, as not having occurred. Therefore, if a statute in a particular case is tolled, it is as if the statute commenced on a later date. A. Levy, Solving Statute of Limitations Problems (1987) § 5.14, p. 195." (Internal quotation marks omitted.) *Fontanella* v. *Marcucci*, 89 Conn. App. 690, 699, 877 A.2d 828 (2005).

Our Supreme Court has stated that "[i]n order to determine the commonly approved usage of language in a statute, we refer to the definition of a word as found in a dictionary." *State* v. *Miranda*, 274 Conn. 727, 753, 878 A.2d 1118 (2005).

Moreover, as further emphasized by the United States Court of Appeals for the Second Circuit, "[e]quitable tolling of a statute means only that the running of the statute is suspended, not that the limitations period begins over again." (Internal quotation marks omitted.) *Tristar Corp.* v. *Freitas*, 84 F.3d 550, 553 (2d Cir. 1996), cert. denied, 521 U.S. 1118, 117 S. Ct. 2508, 138 L. Ed. 2d 1012 (1997).

The plaintiff cites to a trial court decision, *Toomey* v. *State*, Superior Court, judicial district of Litchfield, Docket No. CV-910057183S (September 15, 1992) (7 Conn. L. Rptr. 412), for the proposition that the statute of limitations does not begin to run until permission has been granted by the claims commissioner to bring suit. The court finds this assertion, however, to be misleading, as *Toomey* was decided prior to the enactment of No. 92-34 of the 1992 Public Acts, which is now codified at § 4-160 (d). Moreover, the court in *Toomey* relied on a series of cases that are now outdated and have no legal relevance to the current statutory structure of § 4-160.

Applied to the facts in the present case, the tolling provision contained in § 4-160 (d) merely provides the plaintiff with an extension of time in which to bring her claim. It does not, however, authorize the limitation period contained in § 52-555 (a) to begin anew. Quite the contrary, the plain language of § 4-160 (d) clearly provides that "any statute of limitation applicable to such action shall be tolled until the date such authorization to sue is granted. . . ." General Statutes § 4-160 (d). Section 4-160 (d) does not provide that any applicable statute of limitation will be terminated or begin anew; rather, it provides that the statute of limitation will be tolled "until" authorization is granted. It is clear that the plain language of § 4-160 (d) needs no further review. "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute

itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." General Statutes § 1-2z.

It is noted that statutes of limitation serve a valid and important function in our jurisprudence. "The purpose of the statute of limitations is well settled in our law. There are two principal reasons generally given for the enactment of a statute of repose: (1) it reflects a policy of law, as declared by the legislature, that after a given length of time a [defendant] should be sheltered from liability and furthers the public policy of allowing people, after the lapse of a reasonable time, to plan their affairs with a degree of certainty, free from the disruptive burden of protracted and unknown potential liability . . . and (2) to avoid the difficulty in proof and record keeping which suits involving older [claims] impose. . . . [T]he policy of statutes of limitation includes promoting repose by giving security and stability to human affairs. . . . [W]e will not deprive . . . defendants of the finality, repose and avoidance of stale claims and stale evidence for which the statute of limitations was designed." (Citations omitted; internal quotation marks omitted.) *Beebe* v. *East Haddam*, 48 Conn. App. 60, 67, 708 A.2d 231 (1998).

In the present case, the decedent died on October 8, 1992. Pursuant to § 52-555 (a), the plaintiff had two years from the date of death in which to bring a cause of action. She presented her claim to the claims commissioner on September 19, 1994, which was less than one month before the statute of limitation period would have barred her claim entirely. The period of time that the claim was being reviewed by the claims commissioner tolled the statute of limitation period. In other words, the time spent reviewing the claim "does not

exist" when determining the applicable statute of limitation period. Authorization to bring the claim against the defendant was given to the plaintiff on August 23, 2000, which then allowed her the remaining period of time pursuant to the statute of limitations contained in § 52-555 (a), which was less than one month, in which to bring her claim. The plaintiff did not initiate this action until April 20, 2001, which was well beyond the applicable limitation period for this type of claim.

The court concludes that the tolling of the statute in the present case means only that the running of the statute is suspended and not that the limitations period begins over again.

Accordingly, the motion for summary judgment is granted.